IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Crest Energy Partners, L.P. | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. |
| | § | |
| v. | § | |
| | § | |
| Barge DS-51, her engines, freights, apparel, | § | |
| appurtenances, tackle, etc. *in rem*, and | § | |
| Sunoco, Inc., *in personam* | § | |
| | § | |
| *Defendant*. | § | |

**CREST ENERGY PARTNERS, L.P.'S
VERIFIED ORIGINAL COMPLAINT AND REQUEST FOR SECURITY**

COMES NOW Crest Energy Partners, L.P. (hereafter "Crest" or "Charterers") and files its Verified Original Complaint *in rem* against the sea going barge *DS-51* and against Sunoco, Inc., *in personam*, and would respectfully show the Court as follows:

**I.
PARTIES**

1.    Crest Energy Partners, L.P. is a United States Corporation organized under the laws of Texas, with its principal place of business at 7026 Old Katy Rd. #201, Houston, Texas 77024.

2.    Upon information and belief, the seagoing barge *DS-51* is presently within this Court's jurisdiction and is presently berthed at the Port of Port Arthur, Texas.

3.    Upon information and belief, Sunoco, Inc. ("Sunoco" or "Owners") is a United States Corporation organized under the laws of Delaware, with its principal place of business at 10 Industrial Highway Bldg G, MS4 Lester, PA 19029.

## II.
## JURISDICTION

4.     This Court has jurisdiction over Crest's claim against the *DS-51* by virtue of 28 U.S.C. § 1333 and Supplemental Rule C of the Federal Rules of Civil Procedure as this is an admiralty and maritime claim arising under article III, section 2, clause 1 of the Constitution of the United States of America.  This claim relates to a contractual dispute involving the hire of a vessel to perform ocean transportation services—a maritime contract.

5.     Further, this Court has federal question jurisdiction by virtue of the arbitration clause contained within the maritime contract at issue.  28 U.S.C. § 1331; 9 U.S.C. § 203.

## III.
## BACKGROUND FACTS

### February 25, 2011 ASBATANKVOY Charter Party

6.     On Februay 11, 2011, Crest purchased approximately 40,000 barrels of slop oil (the "Cargo") from Valero.  *See* Crest Valero Contract attached as Exhibit "A".

7.     On February 25, 2011, Crest entered into a charter party arrangement with the purported owners of the *M/V DS-51,* Sunoco, Inc.  *See* Sunoco ASBATANKVOY Charter Party dated February 25, 2011 attached as Exhibit "B".   Further, the fixture recap for the Charter Party nominates two possible discharge ports, the Port of Lake Charles, Louisiana and the Port of Port Arthur, Texas.  *See* Fixture Recap attached as Exhibit "C".

8.     Later that day, the *DS-51* arrived at Valero's Delaware City terminal and loaded approximately 41,000 barrels of Cargo.  *See* DS-51 Cargo Load Summary attached as Exhibit "D".

9.     The Charter Party contains a safe berth clause which contains the following pertinent language:

> **9. Safe Berthing-Shifting.** The vessel shall load and discharge at any safe place or wharf, <u>or alongside vessels or lighters reachable on her arrival</u>, which shall be designated and procured by the Charterer, provided the Vessel can proceed thereto, lie at, and depart therefrom always safely afloat, any lighterage being at the expense, risk peril of the Charterer. The Charterer shall have the right of shifting the Vessel at ports of loading and/or discharge from one safe berth to another on payment of all towage and pilotage shifting to next berth, charges for running lines on arrival at and leaving that bert, additional agency charges and expense, customs overtime and fees, and any other port charges or port expenses incurred by reason of using more than one berth. Time consumed on account of shifting shall count as used laytime except as otherwise provided in Clause 15.

Exhibit B at clause 9 (emphasis added).

10. Pursuant to the fixture recap, Crest nominated Port Arthur, Texas for the discharge port. Exhibit C. The vessel arrived in Port Arthur, Texas on or about March 15, 2011. At that time, Crest instructed the *DS-51* to proceed to the Fina Anchorage to commence discharge to inland barges *MOC VII*, *MOC Eleven*, and barge *AO 0432* (collectively the "Inland Barges"). *See* March 15, 2011 correspondence exchanged between Crest and Owners attached as Exhibit "E".

11. On March 15, 2011, Owners confirmed receipt of payment of charter hire, and then unilaterally demanded to know the names of the barges so that it could vette them. Following Crest's identification of the Inland Barges, and with no contracual basis to do so, Owners rejected the nominated barges and declared that Crest had failed to designate an appropriate berth because discharge to the Inland Barges was "unsafe." *See* Exhibit "E".

12. Following this, pursuant to Crest's right as Charterer, and clause 9 of the Charter Party, Crest once more instructed the *DS-51* to shift to the Fina Anchorage and discharge its Cargo. Owners again refused, and equivocated that the Fina Anchorage was not a berth, in direct contravention of clause 9 of the Charter Party. *Id.*

13. As a result of Owner's refusal to comply with the terms of the Charter Party, Crest's cargo remains laden in the tanks of the *DS-51*, unable to reach its final port of discharge.

14. Crest continues to incur hire expenses and demurrage expenses under the Charter Party for the *DS-51* and the Inland Barges.

## IV.
## CLAIMS

### Count 1.
### Breach of Charter Party

15. Crest incorporates paragraphs 1 through 14 as if fully set forth herein.

16. Owners refusal to dicharge Crest's cargo frustruates the intent of the Charter Party and is a breach of that Charter Party giving rise to a maritime lien.  The maritime lien arises as a matter of law *ex proprio vigore*.  E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia, 876 F.2d 1168, 1174 (5th Cir. 1989).  Consequently, because the lien is against the *DS-51*, Crest may assert its right to have the *DS-51* arrested and sold to satisfy any judgment it may procure against the *DS-51* pursuant to Supplemental Admiralty Rule C of the Federal Rules of Civil Procedure.

17. As a result of the breach of the Charter Party, Crest has incurred loss of use of the *DS-51,* consequential damages, expenses related to this arrest, lost profits and its reasonable attorney's fees, as well as future arbitration expenses.

18. Crest hereby requests this Court order the DS-51 to discharge its cargo to the Inland Barges.

### Count 2.
### Arrest of *DS-51* to Obtain Security for New York Arbitration

19. Crest incorporates by references paragraphs 1 through 18 as set forth fully herein.

20.     The Charter Party calls for New York Arbitration.  *See* Exhibit B.  Although Crest is perfectly satisfied pursuing its claims in this Court, in the event Owners invoke the arbitration clause contained in the Charter Party, Crest seeks security for any future arbitral award against Owners pursuant to the Federal Arbitration Act.  The Federal Arbitration Act specifically authorizes federal courts and aggrieved parties to use Supplemental Rule C of the Federal Rules of Civil Procedure to arrest vessels to obtain security for arbitration.  *See* 9 U.S.C. § 8; *Barge Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 45 (1974); *E.A.S.T., Inc.*, 876 F.2d at 1173.  In this instance, based on Owner's history of evading judgment and concealing assets, including the *DS-51*, Crest requests that the Court order Owners to post security in the event Owner's invoke the arbitration clause contained in the Charter Party, and to stay this action pending resolution of any New York Arbitration.

### Count 3.
### Restitution

21.     Crest incorporates by references paragraphs 1 through 20 as set forth fully herein.

22.     Crest has made hire payments to Owners.  Because the purpose of the Charter Party has been frustrated by Owner's unilateral and unreasonable actions, Crest demands restitution and reimbursement of all hire payments made while the vessel was under arrest.

### V.
### DAMAGES

23.     Crest incorporates paragraphs 1 through 22 as if fully set forth herein.

As a result of the actions of Owners, Owners are liable for Crest's consequential and economic damages which were the sole producing and proximate cause of Crest's injuries which include:

a)  Hire expenses under the Charter Party, demurrage under the Charter Party; hire and expenses for the Inland Barges;

b)  Consequential damages related to finding replacement vessels and fixtures to carry cargo originally booked aboard the *DS-51*;

c)  Lost profits based on the declining price of oil due to Owner's breach of the Charter Party; and,

d)  All of Crest's reasonable attorney's fees and legal costs incurred in appearing this matter to which it has a right under the applicable law.

## VI.
## CONCLUSION

Crest Energy Partners, L.P. accordingly seeks jurisdiction over the *in rem* Defendant, the barge *DS-51*, by arrest pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and respectfully requests the Court to grant it judgment, to allow Crest to discharge its cargo to the waiting Inland Barges, to order the sale of the *DS-51* to satisfy all of Crest's damages, or in the alternative, to order Sunoco, Inc. to place into the Court's registry security pending New York Arbitration and to stay these proceedings pending resolution of any London Arbitration.

**Respectfully Submitted**,

**LEGGE, FARROW, KIMMITT, McGRATH & BROWN L.L.P.**

/s/ Paxton N. Crew
TBA No. 24058720
6363 Woodway, Suite 400
Houston, Texas 77057
713-917-0888
FAX 713-953-9470
**pcrew@leggefarrow.com**
**ATTORNEY-IN-CHARGE FOR
CREST ENERGY PARTNERS, L.P.**

Of Counsel:
LEGGE, FARROW, KIMMITT, McGRATH & BROWN L.L.P.
James T. Brown
TBA No. 03138150
**Jimbrown@leggefarrow.com**